IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

VINCENT T. M.,

                Plaintiff,

        v.                                    Civil Action No.
                                               5:21-CV-1168 (DEP)

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

LAW OFFICES OF                  JUSTIN M. GOLDSTEIN, ESQ.
KENNETH HILLER, PLLC       KENNETH R. HILLER, ESQ.
6000 N. Bailey Ave, Suite 1A
Amherst, NY 14226

FOR DEFENDANT

SOCIAL SECURITY ADMIN.      NATASHA OELTJEN, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

      Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1]  Oral argument was heard in connection with those motions on October 25, 2022, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)    Defendant's motion for judgment on the pleadings is GRANTED.

---

[1]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2

2)    The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)    The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:    October 31, 2022
          Syracuse, NY

3

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
VINCENT THOMAS M.,

                            Plaintiff,

vs.                                5:21-CV-1168

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
-------------------------------------------x

        Transcript of a **Decision** held during a

Telephone Conference on October 25, 2022, the

HONORABLE DAVID E. PEEBLES, United States

Magistrate Judge, Presiding.

                A P P E A R A N C E S

                    (By Telephone)

For Plaintiff:      LAW OFFICE OF KENNETH HILLER, PLLC
                    Attorneys at Law
                    6000 N. Bailey Avenue - Suite 1A
                    Amherst, New York  14226
                      BY:  JUSTIN M. GOLDSTEIN, ESQ.


For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of General Counsel
                    6401 Security Boulevard
                    Baltimore, Maryland  21235
                      BY:  NATASHA OELTJEN, ESQ.




                *Jodi L. Hibbard, RPR, CSR, CRR*
            *Official United States Court Reporter*
                  *100 South Clinton Street*
                *Syracuse, New York  13261-7367*
                       *(315) 234-8547*

1              (The Court and all counsel present by

2         telephone.)

3              THE COURT:  Let me begin by commending counsel for

4    excellent and spirited presentations.  I found this case to

5    be extremely interesting and I've enjoyed working with you.

6              Plaintiff has challenged a determination of the

7    Commissioner of Social Security finding that he was not

8    disabled at the relevant times and therefore ineligible for

9    the Title II benefits which he sought.  His challenge is

10   brought under 42 United States Code Section 405(g).

11             The background is as follows:  Plaintiff was born

12   in July of 1964 and is currently 58 years old.  He was 55 at

13   the alleged onset of his disability in September 2019.  He

14   stands 5 foot 10 inches in height and weighs approximately

15   195 pounds.  Plaintiff lives in Liverpool in a house with his

16   wife.  They have three children all aged 20, apparently

17   triplets, two, at least two are away in college most of the

18   time.  Plaintiff earned a bachelor's degree from LeMoyne

19   College in 1986, a master's degree in school psychology in

20   1992, and a master's degree in social work in 1995

21   approximately, he wasn't sure of the exact date.  He has a

22   driver's license and reports no problems driving.

23             Plaintiff has worked in various social work and

24   counseling capacities over the years.  He worked as a school

25   social worker at the Fulton City School District from

1    August 1 -- August of 2001 to December of 2012.  He worked as

2    a school mental health counselor from January of 2013 to

3    September of 2019.  He worked for a short period for the

4    State University of New York at Oswego and also at Tompkins

5    County Community College, or TC-3.  He apparently, according

6    to AT, administrative transcript 462, left his last regular

7    job in March of 2020.  He has also, since January of 1994,

8    had a private consulting business as a counselor and it

9    continues on, although on a more limited basis than prior to

10   his alleged disability.

11          Mentally, plaintiff suffers from depression, it has

12   also been referred to as major depressive disorder, and

13   anxiety.  He also claims a learning disability but there

14   doesn't seem to be any evidence to support that diagnosis.

15   Plaintiff was hospitalized for three days for depression in

16   2015 in Upstate Medical Center but since then has had no

17   psychiatric hospitalization.

18          Plaintiff also claims to suffer from a foot drop of

19   his right foot and history of asthma.  In 2006, he underwent

20   surgery to address hammertoes and to loosen a tight tendon

21   that he claims resulted in his drop foot.  He claims it

22   causes falls two to three times per year.  Plaintiff's

23   primary physician is the Family Practice Associates, with

24   Dr. Mark VanHusen being his primary care provider there.  He

25   also obtains services from Psychiatric Consultants of Central

1   New York where he sees Doctor of Nurse Practitioner, or DNP,

2   Bambi Carkey every other week approximately.  Dr. Carkey has

3   seen the plaintiff since September of 2019.  The last record

4   of treatment from Dr. Carkey in the administrative transcript

5   is from February 17, 2021.

6          In terms of activities of daily living, plaintiff

7   is able to dress, groom, bathe, cook, clean, do laundry,

8   shop, drive, socialize with family and friends, cycle, ski,

9   SCUBA, kayak, he watches television, he plays sports, he goes

10  to the gym approximately three times per week, he goes to

11  family vacations including to summer vacations in the

12  Adirondacks, he walks with friends and he works or volunteers

13  at a food bank.

14         Procedurally, plaintiff applied for Title II

15  benefits on October 31, 2019, alleging an onset of disability

16  date of September 5, 2019.  In his function report, he

17  claimed disability based on depression and an anxiety

18  disorder and a learning disability.  A hearing was conducted

19  on October 28, 2020 by Administrative Law Judge Elizabeth

20  Koennecke to address plaintiff's application for benefits.  A

21  supplemental hearing was conducted on April -- I'm going to

22  say 11 but I'm having a hard time reading my notes, 2021 with

23  a vocational expert.  On April 19, 2021, Administrative Law

24  Judge Koennecke issued a decision unfavorable to the

25  plaintiff.  That became a final determination of the agency

1    on September 22, 2021, when the Social Security

2    Administration Appeals Council denied plaintiff's application

3    for review.  This action was commenced on October 27, 2021,

4    and is timely.

5            In her decision, Administrative Law Judge Koennecke

6    applied the familiar five-step test for determining

7    disability.

8            At step one, she concluded that plaintiff had not

9    engaged in substantial gainful activity since the alleged

10   onset of his disability, although noting that he does perform

11   ongoing consultative work but not rising to the level of SGA.

12           At step two, Administrative Law Judge Koennecke

13   concluded that plaintiff suffers from severe impairments that

14   impose more than minimal limitations on his ability to

15   perform work functions, including all mental diagnoses

16   generally characterized as anxiety and depression.

17           At step three, ALJ Koennecke concluded that

18   plaintiff's conditions do not meet or medically equal any of

19   the listed presumptively disabling conditions set forth in

20   the Commissioner's regulations, specifically considering

21   Listings 12.04, 12.06, and 12.11.

22           After surveying all of the medical evidence of

23   record, ALJ Koennecke concluded that plaintiff retains the

24   residual functional capacity, notwithstanding his conditions,

25   to perform a full range of work at all exertional levels with

1    additional mental limitations, nonexertional limitations that

2    I will recite further on in my decision.

3            Applying that finding at step four, ALJ Koennecke

4    concluded that plaintiff is unable to perform the demands of

5    his past relevant work.

6            At step five, with the assistance of a vocational

7    expert's testimony, ALJ Koennecke concluded that plaintiff is

8    capable of performing available work in the national economy

9    as a launderer, which is characterized as a medium exertional

10   position with SVP of 2, and therefore found that plaintiff

11   was not disabled.

12           As you know, the standard of review is extremely

13   deferential.  The court must determine whether correct legal

14   principles were applied and substantial evidence supports the

15   determination; substantial evidence being defined as such

16   relevant evidence as a person would find, as a reasonable

17   person would find sufficient to support a conclusion.  It is

18   an extremely deferential standard as noted in *Brault v.*

19   *Social Security Administration Commissioner*, 683 F.3d 443

20   from the Second Circuit, 2012.  As the Circuit noted, this is

21   an exacting standard more so than even the clearly erroneous

22   standard that we are all familiar with, and further noted

23   that under the substantial evidence standard, once an ALJ

24   finds a fact, it can be rejected only if a reasonable fact

25   finder would have to conclude otherwise.

1           As a backdrop, I note additionally that it is

2     plaintiff's burden at the outset to establish limitations

3     resulting from physical and mental conditions and that

4     includes up through the residual functional capacity stage

5     and step four where, after which the burden of proof shifts

6     to the Commissioner.

7           In this case, plaintiff makes two basic

8     contentions.  First, he argues that the mental components of

9     the RFC is not supported due to an error in evaluating

10    conflicting medical opinions; and secondly, he argues that

11    the physical RFC is not supported and that his foot drop

12    would limit his ability to stand and walk for four out of

13    eight hours a day as required by the exertional component of

14    the RFC, and further argues that the administrative law

15    judge, based upon his testimony at the second hearing,

16    undertook a duty to investigate further and failed to fill

17    the gap created in the record.

18          Turning first to the second contention regarding

19    the foot drop, I note as an initial matter that there was no

20    claim in either the functional report submitted on behalf of

21    the plaintiff and apparently prepared by his former attorney

22    or at the first hearing that he suffers from any physical

23    impairment.  At the first hearing he claimed only that it was

24    depression that caused his inability to work, that's at page

25    45 of the administrative transcript.  He did raise the issue

1    at the second hearing.  There is evidence in the record that

2    plaintiff underwent right foot surgery to lengthen a tendon

3    in 2006, that's at 9F of the administrative transcript.  The

4    administrative law judge considered the argument and rejected

5    it, specifically stating her reasoning for doing so at step

6    two, that's at page 14 of the administrative transcript.

7            At step two, the court -- the administrative law

8    judge must determine whether an impairment is sufficiently

9    severe to significantly limit a claimant's physical and

10   mental ability to do basic work activities.  20 C.F.R.

11   Section 404.1521a.  Basic work activities are defined to

12   include the abilities and aptitudes necessary to do most

13   jobs.  It is a modest requirement, de minimus, and intended

14   only to screen out the truly weakest of cases.

15           In this case, it is of course, as I noted,

16   plaintiff's burden to show that he suffers from limitations.

17   The administrative law judge did not outright reject

18   considering the foot drop, despite it not having been brought

19   up.  I note that there is no evidence of any records

20   associated with plaintiff's foot drop condition that were

21   proffered by plaintiff or his counsel to the agency and

22   rejected.  In fact at the second hearing, the new counsel for

23   the plaintiff stated that there was no objection to the

24   record exhibits.

25           Instead, the administrative law judge went on to

1   testify -- or to find that as one factor, the plaintiff did

2   not, when making his application for benefits, claim this,

3   nor did he at the initial hearing when asked why you can't

4   work.  There are podiatry records, including of the surgery,

5   but the last one that specifically addresses it is from 2008,

6   and it is the result of an MRI testing that was performed on

7   March 26, 2008, it appears at 544 of the administrative

8   transcript.  It was to probe plaintiff's partial foot drop

9   and the impression from that MRI testing was "normal".  The

10  administrative -- As the administrative law judge also noted,

11  claimant worked over a decade without -- after he underwent

12  the foot surgery.  He reports that he does very well.  There

13  are at least two instances where he was observed to have a

14  normal gait by Dr. Carkey.

15          The plaintiff's activities of daily living greatly

16  undermine the claim that his foot drop would impair him from

17  performing work activities.  He goes to the gym three times a

18  week, he walks with friends, he's able to drive without

19  problems, he goes on vacation with his friend, in fact even

20  he testified at most it would cause him to fall maybe two or

21  three times a year, and he did not testify to my recollection

22  of also being unable to stand for periods of time because of

23  his foot drop.  He does not use an ambulatory device such as

24  a cane or a brace.  And so I don't find any error in the

25  administrative law judge's finding that plaintiff did not

1    establish at step two that he suffered from a severe

2    impairment, severe physical impairment.  I note that, I

3    reviewed Dr. VanHusen's notes at 6F, and other than in the

4    medical history section, there doesn't appear to be any

5    mention of a foot drop.  There's no indication of any

6    treatment after 2008.

7              It is plaintiff's burden to supply medical records.

8    The agency only is responsible to develop a complete medical

9    history of at least 12 months preceding the filing of

10   plaintiff's application; in this case that was October 31,

11   2019.  20 C.F.R. Section 404.1512.  I note also that a

12   plaintiff cannot, cannot support a finding of a diagnosed

13   condition by simply his or her testimony regarding symptoms.

14   *Winchell v. Colvin*, 2014 WL 4263764 from the Northern

15   District of New York, August 28, 2014.  I note that while it

16   was not the sole reason for rejecting the foot drop, the

17   administrative law judge also properly considered that it was

18   never included in plaintiff's original claims of why he was

19   disabled.  *Stephen A. v. Commissioner of Social Security*,

20   2021 WL 1099617 from the Western District of New York,

21   March 23, 2021.  So I do not find merit in plaintiff's step

22   two argument.

23             Turning to the first argument, plaintiff challenges

24   the residual functional capacity finding.  So an RFC

25   represents finding of the range of tasks a plaintiff is

1    capable of performing notwithstanding his impairments and it

2    ordinarily means a claimant's maximum ability to perform

3    sustained work activities in an ordinary setting on a regular

4    and continuing basis, meaning eight hours a day for five days

5    a week or an equivalent schedule.  And of course an RFC is

6    informed by consideration of all of the relevant medical and

7    other evidence and must be supported by substantial evidence.

8         In this case, as I indicated, the administrative

9    law judge included a rather restrictive residual functional

10   capacity to address plaintiff's mental health condition.  He

11   limited the claimant to understand and follow simple

12   instructions and directions, perform simple tasks

13   independently, maintain attention and concentration for

14   simple tasks, regularly attend to a routine and maintain a

15   schedule, relate to and interact appropriately with all

16   others to the extent necessary to carry out simple tasks and

17   handle simple repetitive work-related stress in that he can

18   make occasional decisions directly related to the performance

19   of simple tasks involving goal-oriented work rather than work

20   involving a production pace.

21        The medical evidence supports the determination.

22   When considering the administrative law judge's evaluation of

23   the record opinions, I note that the analysis is informed by

24   the new regulations that went into effect for applications

25   filed after March of 2017.  Under those regulations, an ALJ

1    does not defer or give any specific evidentiary weight,

2    including controlling weight, to any medical opinions or

3    prior administrative medical findings, including those from a

4    claimant's medical sources.  Instead, an ALJ must consider

5    those opinions using, applying the relevant factors and

6    particularly must consider the factors of supportability and

7    consistency of those medical opinions.  Under the

8    regulations, the ALJ must articulate how persuasive he or she

9    found each medical opinion and must explain how he or she

10    considered the supportability and consistency of those

11    medical opinions.  The ALJ is also required to consider the

12    other relevant factors set forth in the regulations but is

13    not required to explain how he or she considered those

14    factors.  In this case -- and of course, the overarching

15    consideration is that it is for the administrative law judge

16    in the first instance to evaluate and weigh any conflicting

17    reports, to the extent that there are any.  *Veino v.*

18    *Barnhart*, 312 F.3d 578, from the Second Circuit December 10,

19    2002.

20          In this case there are several medical opinions in

21    the record.  Dr. T. Bruni issued what is actually considered

22    a prior administrative finding but it is subject to the

23    regulations, on July 11, 2020, it appears at pages 76 through

24    88 of the administrative transcript.  The administrative law

25    judge considered that opinion and at page 13 found it to be

1  "more persuasive".  The opinion -- the worksheet of, at

2  Section 1 of the mental residual functional capacity opinion

3  does note moderate limitations in certain areas:  The ability

4  to maintain attention and concentration for extended periods;

5  the ability to complete a normal workday and workweek without

6  interruptions from psychologically-based symptoms; and to

7  perform at a consistent pace without an unreasonable number

8  and length of rest periods.  However, the mental residual

9  functional capacity finding, the opinion of Dr. Bruni was,

10  despite these limitations, the claimant retains the mental

11  residual functional capacity as follows:  Understanding and

12  memory, the claimant is able to understand and remember

13  simple and detailed instructions and procedures; sustained

14  concentration and persistence, the claimant exhibits some

15  difficulty but overall can maintain adequate attention and

16  concentration to complete work like procedures and can

17  sustain a routine.  There are also findings with regard to

18  social interaction and adaptation which I don't think are at

19  issue in this case.  That is fully consistent with a residual

20  functional capacity.

21       The opinion of Dr. Jeanne Shapiro, consultative

22  examiner, also supports the residual functional capacity

23  finding.  She issued an opinion after a consultative

24  examination of the plaintiff on December 16, 2020.  It

25  appears at 513 to 520 of the administrative transcript.  As

1    is relevant in her medical source statement, she finds that

2    mild to moderate limitations sustaining concentration and

3    performing tasks at a consistent pace depending on his level

4    of anxiety; mild to moderate limitations sustaining an

5    ordinary routine and regular attendance at work due to lack

6    of motivation.  Dr. Shapiro also in her medical source

7    statement found moderate to marked limitations regulating

8    emotions, controlling behaviors, maintaining well being.  The

9    administrative law judge rejected any marked limitations in

10   that area and offered an adequate explanation as to why, but

11   in the areas that we're discussing here, attention and

12   concentration, and attendance at work, the medical source

13   statement is consistent with the residual functional capacity

14   finding.

15           I note that in the medical source statement that is

16   attached to the report, pages 518 to 520, basically there are

17   no limitations noted in plaintiff's ability to understand,

18   remember and carry out instructions and at most, moderate --

19   mild to moderate in interacting with public, interacting

20   appropriately with supervisors and interacting with

21   coworkers, and that is all the more consistent with the

22   residual functional capacity finding.

23           As I indicated, it is -- that opinion is discussed

24   by the administrative law judge at pages 17 and 18 of her

25   opinion.  She found it persuasive but did reject, as I

1    indicated, the moderate to marked limitation, particularly in

2    reliance on the attachment which didn't include limitations

3    to that extent.

4            The administrative law judge also considered three

5    opinions offered by Dr. Carkey.  The first was from July 3,

6    2020 and it is a more narrative form.  It indicates mental

7    status, subdued attitude, appearance and behavior appears at

8    pages 450 to 453.  It is also repeated at 482 to 485.  It

9    describes mood and affect as dysthymic and restricted but

10   attention and concentration is primarily within normal limits

11   with some issues and orientation, memory, information are all

12   within normal limits; insight and judgment is described as

13   fair.  At page 452, Dr. Carkey opines that plaintiff is

14   unable to work based on five-by-five of major depression

15   disorder and of course that is an opinion given on a matter

16   that was reserved to the Commissioner.

17           On August 6, 2020, Dr. Carkey filled out a mental

18   capacity assessment that appears at 478 to 480 of the record.

19   In understanding, remembering, or applying information, she

20   rates the plaintiff as moderately limited in all of the four

21   sub areas.  In concentrating, persistence or maintaining

22   pace, also moderately limited in the six specified areas,

23   those being the two sub areas that are at issue here.

24   Moderate is described, is defined as, "Your functioning in

25   this area independently, appropriately, effectively, and on a

1    sustained basis is fair."  The administrative law judge

2    considered that this was consistent with her RFC finding and

3    I agree.  The opinion is at least somewhat supported.

4            The third one that is given by Dr. Carkey is from

5    March 17, 2021.  It appears at 571 to 573 of the

6    administrative transcript.  And I have to disagree with,

7    respectfully, plaintiff's counsel.  I believe that it is not

8    similar to the earlier opinion from August 6, 2020.  It lists

9    several areas in which plaintiff is rated as unable to meet

10   competitive standards, including remember work like

11   procedures, maintain regular attendance and be punctual

12   within customary usually strict tolerances, complete a normal

13   workday and workweek without interruptions from

14   psychologically-based symptoms, respond appropriately to

15   changes in a routine work setting and deal with normal work

16   stress.  That term, unable to meet competitive standards,

17   means, is defined to mean, "Your patient cannot

18   satisfactorily perform this activity independently,

19   appropriately, effectively and on a sustained basis in a

20   regular work setting."  That opinion does not seem to support

21   the residual functional capacity.  It was addressed by the

22   administrative law judge and found to be inconsistent and

23   unsupported.

24           I note that there are treatment records from the

25   plaintiff, plaintiff's treatment with Dr. Carkey extending

1   from when she was first consulted in 2019, September of 2019

2   and extending through to February 17, 2021.  They appear at

3   administrative transcript Exhibits 1F, 4F, and 10F.  I've

4   reviewed them extremely carefully.  And although there are a

5   smattering of treatment notes that reflect some sort of

6   thought or ideation of suicidal tendencies, the vast majority

7   are of plaintiff denying it.  They do not reflect any

8   material deterioration in plaintiff's condition that would

9   explain the disparity between the second and third opinions

10  from Dr. Carkey.  In fact many of them from August 20, 2020

11  note that the plaintiff feels better, his attention and

12  concentration is fair.  There are references to plaintiff's

13  mood and affect being dysphoric or dysthymic, but for

14  example, September 3, 2020, 567, plaintiff's feeling a little

15  bit better and hopeful, fair judgment, he denies suicidal

16  ideation; September 17, 2020, 566, doing better but not a

17  hundred percent, not ready to work, denies suicidal ideation,

18  otherwise within normal limits with the exception of mood and

19  affect being dysthymic; September 30, 2020 at 565, little

20  less depressed, denies suicidal ideation, mood and affect

21  reported dysthymic, otherwise within normal limits;

22  August 13, 2020 at 564, plaintiff's not ready to work yet,

23  denies suicidal ideation, mood and affect dysthymic,

24  otherwise within normal limits; October -- I'm sorry,

25  September -- November 3, 2020, feeling a little better, still

1    depressed, good and bad days, within normal limits, almost
2    exclusively denies suicidal ideation and mood and affect
3    described as dysphoric; December 3, 2020, he reports that his
4    sister died and his mother was dying of COVID, he reported
5    walking with friends, no abnormal psychotic thoughts,
6    short-lived suicidal ideation, mood and affect dysthymic;
7    December 22, 2020 still depressed but getting better, thought
8    process less negative, judgment improving, attention and
9    concentration fair, denies suicidal ideation, mood and affect
10   dysthymic, insight fair.  The entry from January 6, 2021,
11   feeling a little better, that's at 560, good and bad days,
12   monotone speech, good judgment, good attention and
13   concentration, mood and affect, feeling better but
14   restricted, good insight, walks -- reported walking with
15   friends; January 28, 2021, 559, feeling okay, feeling better,
16   no abnormal psychotic thoughts, judgment good, denies
17   suicidal ideation, mood and affect depressed, good insight;
18   February 17, 2021 at 558, okay, some rough days, try to stay
19   busy, regular exercise, mood improves with activity and
20   interaction, good judgment, no abnormal thoughts, attention
21   and concentration attentive, fluctuating suicidal ideation
22   with depression, insight good, mood and affect dysphoric.
23          So there isn't any explanation in the treatment
24   notes.  The treatment notes support the rejection of the
25   latter more restrictive opinion from Dr. Carkey.

1          The RFC, in addition to being supported by the

2    medical opinions of Dr. Bruni, Dr. Shapiro, and somewhat by

3    Dr. Carkey, it is also supported by, and the treatment

4    records that I've just recited, plaintiff's robust activities

5    which include cycling, skiing, SCUBA, kayak, going to the

6    gym, walking with friends, taking trips with the family

7    including two vacations to the Adirondacks, socializing and

8    volunteering at a food bank.  As the administrative law judge

9    also noted, plaintiff's continuing private practice work is

10   also, also undermines -- or supports I should say, put it the

11   other way around, the RFC, and the lack of any psychiatric

12   hospitalization during the relevant period, none since 2015.

13   So -- and I note when we talk about moderate limitations,

14   moderate limitations are not inconsistent with the ability to

15   perform simple unskilled work.  *James R. v. Berryhill*, 2018

16   WL 8996355 from the Northern District of New York,

17   September 10, 2018.  As I said, Dr. Bruni found moderate

18   limitations in his worksheet but concluded in his residual

19   functional capacity opinion the plaintiff could perform

20   unskilled work.  Dr. Shapiro only found mild to moderate

21   limitations in the functional areas that we're discussing.

22   And Dr. Carkey similarly finds only moderate limitations in

23   her second opinion.  Those opinions all support the residual

24   functional capacity finding.  The *James R.* case I cited to

25   already and *Shari L. v. Kijakazi*, 2022 WL 561563 from the

1    Northern District of New York, February 24, 2020.

2            The plaintiff argues that a moderate to marked

3    limitation in sustaining routine should result in the finding

4    that plaintiff would be absent two or more times per month.

5    Similar arguments have been rejected by the courts including

6    in *Becky Sue H. v. Commissioner of Social Security*, 2021 WL

7    7367082 from the Northern District of New York, December 15,

8    2021.  As the court noted in *Lowry v. Commissioner of Social

9    Security*, 2017 WL 1290685 from the Northern District of

10   New York, March 16, 2017, this implicates the ability to

11   concentrate and persist and a moderate limitation in those

12   areas, once again, does not preclude unskilled work.

13           Plaintiff argues that because those opinions were

14   accepted, all of the limitations set forth in those opinions,

15   including specifically Dr. Shapiro, should have been included

16   and taken into account in the RFC and of course the mere fact

17   that an ALJ chooses to credit an opinion does not require the

18   ALJ to accept each and every limitation set forth in that

19   opinion.

20           In sum, I think that the RFC is adequately

21   supported by substantial evidence.  Plaintiff's challenge to

22   the evaluation of the conflicting medical opinions, to the

23   extent they do conflict, represents nothing more than an

24   invitation for the court to reweigh conflicting evidence,

25   something that is of course entrusted to the Commissioner.

1              So in conclusion, I find that the correct legal

2      principles were applied, substantial evidence supports the

3      resulting determination.  I will therefore grant judgment on

4      the pleadings to the defendant and order dismissal of

5      plaintiff's complaint.

6              Thank you both, I hope you have a good afternoon.

7              MR. GOLDSTEIN:  Have a good afternoon.

8              MS. OELTJEN:  Thank you.

9                   (Proceedings Adjourned, 3:19 p.m.)

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4              I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

5       Official Realtime Court Reporter, in and for the

6       United States District Court for the Northern

7       District of New York, DO HEREBY CERTIFY that

8       pursuant to Section 753, Title 28, United States

9       Code, that the foregoing is a true and correct

10      transcript of the stenographically reported

11      proceedings held in the above-entitled matter and

12      that the transcript page format is in conformance

13      with the regulations of the Judicial Conference of

14      the United States.

15

16                         Dated this 27th day of October, 2022.

17

18

19                         /S/ JODI L. HIBBARD
                           _____

20                         JODI L. HIBBARD, RPR, CRR, CSR
                           Official U.S. Court Reporter
21

22

23

24

25